1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7  LYNETTE FRARY, Individually and as            No. C 12-3928 MEJ
   Administrator of the Estate of Anthony Brandon
   Carmignani, Deceased, JAMIE BALL, as         **ORDER RE: DEFENDANTS' MOTIONS**
8  Natural Guardian of Amaya Carmignani, a      **TO DISMISS**
   minor, and HEATHER HOWARD,
9                                                **(Docket Nos. 11, 20)**
                Plaintiffs,
10
         vs.
11
   COUNTY OF MARIN; CITY OF NOVATO;
12 SHERIFF ROBERT T. DOYLE, CHIEF
   JOSEPH KREINS, DEPUTY RACHEL
13 HAMMER, OFFICER THOMAS
   MACKENZIE, OFFICER MICHAEL DUNN,
14 OFFICER STEPHANIE COMMISTO, and
   DOES 1 to 50, Inclusive,
15
                Defendants.
16 _____/

17

18                        **INTRODUCTION**

19        Plaintiffs Lynette Frary, Jamie Ball as guardian on behalf of minor Amaya Carmignani, and

20 Heather Howard ("Plaintiffs") bring this civil rights action under 42 U.S.C. § 1983 against

21 Defendants County of Marin, Sheriff Robert T. Boyle, and Deputy Rachel Hammer (the "County

22 Defendants"), and City of Novato, Chief Joseph Kreins, and City of Novato Police Officers Thomas

23 Mackenzie, Michael Dunn, and Stephanie Commisto (the "City Defendants") stemming from the

24 death of Anthony Brandon Carmignani, who died of a drug overdose while in custody at the Marin

25 County Jail.  Compl., Dkt. No. 1.  Before the Court is the City Defendants' Motion to Dismiss

26 Plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure ("Rule")

27 12(b)(6), (Dkt. No. 11 - "City Motion"), and the County Defendants' Joinder in the City Defendants'

28 Motion and Motion to Dismiss under Rule 12(b)(6), (Dkt. No. 20 - "County Motion").  Plaintiffs

**United States District Court**
For the Northern District of California

1   have filed Oppositions, to which the City Defendants and County Defendants have each filed

2   Replies.  Dkt. Nos. 21-24.  Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable

3   for disposition without oral argument and VACATES the January 10, 2013 hearing.  After carefully

4   considering the parties' briefs and the controlling legal authorities, the Court hereby GRANTS IN

5   PART and DENIES IN PART the Defendants' motions for the reasons set forth below.

6   **BACKGROUND**

7        The relevant facts as taken from Plaintiffs' Complaint are as follows.  On July 29, 2011,

8   Officer Dunn investigated a reported domestic dispute between decedent Anthony Brandon

9   Carmignani and his wife, Heather Howard, for his vandalism of her automobile.  Compl. ¶ 32.

10  During the course of the vandalism report, Howard advised Officer Dunn that Carmignani had

11  narcotics in his possession.  *Id.* ¶ 33.  Officer Dunn broadcast a request for all City of Novato

12  officers to locate and arrest Carmignani.  *Id.* ¶ 34.

13       Officer Mackenzie saw Carmignani walking in front of a local store and went to arrest him.

14  *Id.* ¶ 35.  Carmignani tried to flee, then submitted to arrest and was handcuffed, pat searched for

15  weapons, and placed in the rear of Officer Mackenzie's squad car.  *Id.* ¶¶ 36-37.  Officer Mackenzie

16  failed to detect several controlled substances and other pills in Carmignani's pockets during the pat

17  search for weapons.  *Id.* ¶ 38.  Officer Mackenzie then transferred Carmignani to Officer Dunn,

18  who placed him in the back of his patrol car for transport to the Marin County Jail.  *Id.* ¶ 39.  Officer

19  Dunn assumed Officer Mackenzie thoroughly searched Carmignani and did not conduct a separate

20  search of his own.  *Id.* ¶ 40.  Officer Dunn did not attempt to locate or seize the narcotics Howard

21  said were in Carmignani's possession.  *Id.* ¶ 41.  Neither officer searched Carmignani for items,

22  other than weapons, that might be dangerous to himself or others.  *Id.* ¶ 42.  Medications in

23  Carmignani's possession remained undetected in his front pockets as Officer Dunn drove

24  Carmignani to the jail facility.  *Id.* ¶ 43.

25       During transport to the jail, Carmignani moved his handcuffed hands from behind his back to

26  the front of his body and nearly removed his shirt.  *Id.* ¶ 44.  Officer Dunn did not return

27  Carmignani's hands to behind his back.  *Id.* ¶ 45.  Carmignani asked Officer Dunn to open the car

28  Page 2 of  18

United States District Court
For the Northern District of California

1  window, which Plaintiffs allege is a telltale sign that Carmignani was hoping to dispose of

2  something. *Id.* ¶ 46.  Plaintiffs contend Carmignani retrieved several pills from his pockets and

3  ingested them, and they contend Officer Dunn either saw this or could have seen it if he had been

4  properly monitoring Carmignani. *Id.* ¶ 47.

5     When they arrived at the Marin County Jail at approximately 3:30 p.m., Carmignani was

6  cooperative with deputies processing him. *Id.* ¶ 48.  County jail staff searched Carmignani and

7  found several pills he was unable to retrieve from his pockets. *Id.* ¶ 49.  Carmignani admitted to jail

8  staff he had ingested some of the pills before his arrival at the jail. *Id.* ¶ 50.  Plaintiffs contend

9  County jail staff observed Carmignani's eyes were dilated, that he was red and "loopy", and they

10  knew he had a history of substance abuse that was noted in his jail records. *Id.* ¶¶ 51-54.  In the

11  early evening, a jail nurse noticed Carmignani appeared drowsy, and he told jail staff he would

12  "crash hard" because of pills he had taken. *Id.* ¶¶ 56-57.  Carmignani was placed alone in a cell in

13  the Administrative Segregation portion of the jail rather than with another inmate. *Id.* ¶ 58.  No

14  special efforts were made to monitor his medical condition after he was placed alone in the cell. *Id.*

15  ¶ 59.  Guards monitoring the area could see into only a small portion of the cell in which Carmignani

16  was placed. *Id.* ¶ 60.

17     At approximately 10:24 p.m., seven hours after Carmignani was in custody, Officer

18  Commisto was at the jail to serve papers on Carmignani, and she had a conversation with him at that

19  time. *Id.* ¶¶ 61, 69.  Plaintiff Frary, Carmignani's mother, previously advised Officer Commisto that

20  he had taken a large number of narcotics and other medications from her home, that she worried he

21  was in danger if he ingested a large number of the missing pills, that she believed Officer Commisto

22  should determine the number of pills found on Carmignani after his arrest to determine how many he

23  ingested, and that Officer Commisto should presume Carmignani ingested whatever number of pills

24  were not recovered. *Id.* ¶¶ 63-66.  Officer Commisto promised to communicate Frary's information

25  to the jail staff, but either she failed to convey such information or such information was ignored by

26  jail personnel. *Id.* ¶¶ 67-68.  Carmignani's conversation with Officer Commisto was the last time he

27  was seen conscious or moving within his cell. *Id.* ¶ 69.

28

United States District Court
For the Northern District of California

At approximately 3:00 a.m. on July 30, 2011, an inmate in a neighboring cell heard Carmignani snoring. *Id.* ¶ 70. Soon thereafter, sometime between 5:00 to 6:00 a.m., Deputy Hammer and two volunteer inmates attempted to serve Carmignani breakfast. *Id.* ¶ 71. One inmate said he saw Carmignani breathing and the other inmate observed and stated out loud that he did not look well. *Id.* ¶¶ 72-73. Carmignani displayed no reaction to their shouts and banging, which continued for about a minute. *Id.* ¶ 74. Deputy Hammer made no attempt to further investigate Carmignani's medical condition or have others do so; instead, she reported that Carmignani had refused breakfast and moved to the next cell. *Id.* ¶¶ 75-76.

At approximately noon, "Sergeant Hernandez" (who is not a party in this case) found that although Carmignani's body was warm to the touch and his lips appeared moist, he was unresponsive, not breathing, and had no pulse. *Id.* ¶¶ 78-79. Carmignani could not be revived and was declared dead shortly after arriving at the Kaiser Medical Center emergency room in San Rafael. *Id.* ¶¶ 80-81.

Plaintiffs filed the present Complaint on July 26, 2012. In their Complaint, Plaintiffs allege that Defendants utilized improper arrest procedures, failed to act upon information relating to Carmignani's health that had been provided by his wife and mother, failed to convey vital information to those responsible for ensuring his health and safety while in the jail, failed to provide competent medical care and treatment, manifested a deliberate indifference to Carmignani's rights under the United States Constitution and California law, and caused his wrongful death. *Id.* ¶ 83. Plaintiffs bring seven causes of action: (1) violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 against Hammer, Mackenzie, Dunn, and Commisto in their individual capacities; (2) supervisory liability under 42 U.S.C. § 1983 against Sheriff Doyle and Chief Kreins; (3) municipal liability under 42 U.S.C. § 1983 against Marin County and the City of Novato; (4) wrongful death under California Government Code section 845.6 against Hammer and Marin County; (5) violation of California Civil Code section 52.1 against all Defendants; (6) negligence against all Defendants; and (7) survival damages against all Defendants.

On September 24, 2012, the City Defendants filed their Motion to Dismiss.  Dkt. No. 11.
The City Defendants argue that the Complaint is subject to dismissal because: (1) Plaintiffs' first
count for violation of civil rights under 42 U.S.C. § 1983 fails to state a claim against the City
Defendants; (2) Plaintiffs' second count for supervisory liability fails to state a claim against Chief
Kreins; (3) Plaintiffs' third count for municipal liability under § 1983 fails to state facts sufficient to
state a claim against the City of Novato; (4) the fifth count for violation of California Civil Code
section 52.1 fails to state facts sufficient to state a claim; and (5) Plaintiffs' sixth and seventh counts
for negligent wrongful death and survivorship fail to state facts sufficient to state a claim.  *Id.* at 1-2.

On October 9, 2012, the County Defendants filed their Joinder in the City Defendants'
Motion, as well as their Motion to Dismiss.  Dkt. No. 20.  The County Defendants incorporate the
arguments made by the City Defendants and add that: (1) the Complaint does not implicate the
County Defendants regarding any violation of the Fourth Amendment; (2) Carmignani was not a
post-conviction prisoner within the meaning of the Eighth Amendment; (3) Plaintiffs set forth no
Fourteenth Amendment violation under § 1983 because they cannot demonstrate either County
Defendants' intent to punish Carmignani or that his pretrial detention was unrelated to a legitimate
government goal; (4) Plaintiffs' Complaint alleges no facts demonstrating Sheriff Doyle engaged in
wrongful conduct or that such conduct was connected to any constitutional violations suffered by
Carmignani; (5) the Complaint fails to support municipal liability; (6) the fourth cause of action
under California Government Code section 845.6 fails to allege the requisite facts establishing the
County Defendants knew or had reason to know Carmignani needed immediate medical care; and
(7) the fifth, sixth, and seventh causes of action (under California Civil Code section 52.1 and
general negligence) fail for lack of allegations of violence or intimidation, unavailability in a
wrongful death action, and lack of allegation of breach of mandatory statutory duty.  *Id.* at 4-9.

## LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts
to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

1    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

2    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability

3    requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

4    (quoting *Twombly*, 550 U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to

5    dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of

6    his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

7    the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to

8    relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals

9    omitted).

10        In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as

11   true and construe them in the light most favorable to the plaintiff.  *Id.* at 550; *Erickson v. Pardus*,

12   551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  If

13   the court dismisses the complaint, it should grant leave to amend even if no request to amend is

14   made "unless it determines that the pleading could not possibly be cured by the allegation of other

15   facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc.*

16   *v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

17                                      **DISCUSSION**

18   **A.      Claims under 42 U.S.C. § 1983**

19        In their first cause of action against Deputy Hammer and Officers Mackenzie, Dunn, and

20   Commisto (the "Individual Officers"), Plaintiffs allege that the Individual Officers violated their

21   First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  Compl.

22   ¶¶ 85-94.  In their second cause of action, Plaintiffs allege that Sheriff Doyle and Chief Kreins

23   violated the Eighth and Fourteenth Amendments by failing to properly train, assign, supervise, and

24   guide their staff and medical personnel to take necessary measures to ensure the health and safety of

25   arrested persons and to ensure that they are provided with all necessary monitoring and medical care.

26   *Id.* ¶¶ 95-101.  In their third cause of action, Plaintiffs allege that Marin County and the City of

27   Novato are liable for the actions of the individual defendants because they were committed to

28                                    Page 6 of  18

1   customs, policies, practices and/or procedures adopted or ratified by the municipalities.  *Id.* ¶¶ 102-

2   109.

3          To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right

4   secured by the Constitution or laws of the United States was violated; and (2) that the violation was

5   committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

6   "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for

7   vindicating federal rights elsewhere conferred.' . . . The first step in any such claim is to identify the

8   specific constitutional rights allegedly infringed."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

9          In their Oppositions, Plaintiffs state that they "make no argument that the defendants violated

10  any of Anthony's or their rights under the First, Fourth, Fifth or Eighth Amendments"  City Opp'n at

11  7; County Opp'n at 7.  Plaintiffs go on to state that "since what is before the Court is a Motion to

12  Dismiss rather than a Motion to Strike as to particular allegations, this concession has no practical

13  effect."  City Opp'n at 7 n. 3.  Plaintiffs also state that "the Novato defendants correctly argue at

14  length that Ms. Frary, Ms. Ball (as guardian of Amaya) and Ms. Howard are not entitled to pursue

15  claims for deprivation of their associational rights with the decedent under the First Amendment, but

16  that does not defeat their claims."  *Id.*

17         Plaintiffs cite no authority whatsoever in support of the proposition that their First, Fourth,

18  Fifth, and Eighth Amendment claims can only be eliminated by way of a motion to strike and not the

19  City and County Defendants' Motions to Dismiss.  As the Defendants' note, Plaintiffs appear to

20  assert that because dismissal of these claims does not dismiss the entire first count, these claims can

21  only be attacked by a motion to dismiss.  However, Rule 12(b)(6) authorizes dismissal where a

22  complaint fails to state a "claim" upon which relief can be granted.  There is no requirement that a

23  motion to dismiss apply to an entire cause of action.  *See, e.g., Jawien v. Cnty. of San Bernardino*,

24  2012 WL 1204360, at *1 (C.D. Cal. Apr. 5, 2012) (granting dismissal of § 1983 and other claims

25  contained in certain causes of action but leaving other claims within the same causes of action intact;

26  *Cox v. Comm. PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1272, 1285 (S.D. Cal. 2002) (same);

27  *Sullivan v. City of San Rafael*, 2012 WL 3236058, at *10-11 (same).  Accordingly, because Plaintiffs

28

United States District Court
For the Northern District of California

have failed to meet their obligation to provide any grounds for their entitlement to relief, the Court

GRANTS the City Defendants' and County Defendants' Motions to Dismiss the First, Fourth, Fifth,

and Eighth Amendment claims under 42 U.S.C. § 1983 in Plaintiffs' first, second, and third causes

of action.  Thus, the Court need only address Plaintiffs' Fourteenth Amendment claims under §

1983.

       1.    <u>First Cause of Action</u>

Plaintiffs' first cause of action alleges that the Individual Officers violated their Fourteenth

Amendment rights through deliberate indifference and callous disregard of Carmignani's need for

medical care and treatment.  Compl. at 12-14.  In their Oppositions, Plaintiffs add that Officers Dunn

and Mackenzie, as the officers who had custody of Carmignani prior to his arrival at the Marin

County Jail, had a duty to protect him from harm, including self-harm, because they knew he had

drugs on him.  City Opp'n at 2.  As to Officer Commisto, Plaintiffs allege that by promising

Carmignani's mother that she would convey vital information about the medications to jail

personnel and then failing to do so, she committed an affirmative act that induced reliance, which

significantly raised the risk of harm.  *Id.*  Plaintiffs also argue that Deputy Hammer violated the

Fourteenth Amendment when she "callously walked away as Anthony lay inert and unresponsive

despite her and her assistants' efforts to rouse him for breakfast."  County Opp'n at 2.

Claims of failure to provide care for serious medical needs, when brought by a detainee who

has been neither charged nor convicted of a crime, are analyzed under the substantive due process

clause of the Fourteenth Amendment.  *Lolli v. County of Orange*, 351 F.3d 410, 418–89 (9th Cir.

2003).  Even though such detainees' rights arise under the Due Process clause of the Fourteenth

Amendment, the guarantees of the Eighth Amendment guide the Court and provide a minimum

standard of care for determining their rights, including the right to medical care.  *Oregon Advocacy*

*Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003).  In the Ninth Circuit, the test for "deliberate

indifference" consists of two parts: (1) the plaintiff must show a "serious medical need"; and (2) the

plaintiff must show that the defendant's response to the need was deliberately indifferent.  *Jett v.*

*Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  Indifference may appear where officials deny, delay,

United States District Court
For the Northern District of California

1   or intentionally interfere with medical treatment.  *Id.*

2            Here, accepting the facts in Plaintiffs' Complaint as true, the Court finds that Plaintiffs have

3   pled factual content that allows the Court to draw the reasonable inference that the Individual

4   Officers are liable for the misconduct alleged.  Plaintiffs allege that Howard advised Officer Dunn

5   that Carmignani had narcotics in his possession, but Dunn made no attempt to locate and seize the

6   narcotics.  Compl. ¶¶ 33, 41.  Plaintiffs further allege that Officer Mackenzie failed to conduct a

7   proper search of Carmignani, and he therefore failed to detect several controlled substances and

8   other pills in Carmignani's pockets.  *Id.* ¶¶ 38, 43.  Although it is not clear whether Dunn informed

9   Mackenzie (or any other officers) of the potential narcotics, the Court finds it improper to make that

10  factual determination at this stage in the proceedings.

11           Upon arrival at the hospital, Plaintiffs allege that several pills were retrieved from

12  Carmignani's pocket, he admitted to prison staff that he had ingested some of those pills prior to his

13  arrival, and that deputies and staff noticed he was "loopy."  *Id.*  ¶¶ 49-53.  Despite this, Carmignani

14  was placed alone in a cell in the Administrative Segregation portion of the jail rather than with

15  another inmate.  *Id.* ¶ 58.  No special efforts were made to monitor his medical condition after he

16  was placed alone in the cell.  *Id.* ¶ 59.

17           As to Officer Commisto, Plaintiffs allege that Frary informed her that Carmignani had taken

18  a large number of narcotics and other medications from her home; that she worried he was in danger

19  if he ingested a large number of the missing pills; that she believed Officer Commisto should

20  determine the number of pills found on Carmignani after his arrest to determine how many he

21  ingested, and that Officer Commisto should presume Carmignani ingested whatever number of pills

22  were not recovered.  *Id.* ¶¶ 63-66.  Plaintiffs allege Officer Commisto promised to communicate

23  Frary's information to the jail staff, but either she failed to convey such information or such

24  information was ignored by jail personnel.  *Id.* ¶¶ 67-68.

25           Finally, as to Deputy Hammer, Plaintiffs allege that she and two volunteer inmates attempted

26  to serve Carmignani breakfast.  *Id.* ¶ 71.  One inmate said he saw Carmignani breathing and the

27  other inmate observed and stated out loud that he did not look well.  *Id.* ¶¶ 72-73.  Carmignani

28

United States District Court
For the Northern District of California

1    displayed no reaction to their shouts and banging, which continued for about a minute.  *Id.* ¶ 74.

2    Deputy Hammer made no attempt to further investigate Carmignani's medical condition or have

3    others do so; instead, she reported that Carmignani had refused breakfast and moved to the next cell.

4    *Id.* ¶¶ 75-76.

5        Based on these allegations, the Court finds that Plaintiffs' factual allegations are enough to

6    raise a right to relief under the Fourteenth Amendment above the speculative level.  Accordingly, the

7    City Defendants' and County Defendants' Motions to Dismiss Plaintiffs' first cause of action are

8    DENIED as to Plaintiffs' Fourteenth Amendment claim.

9        2.    <u>Second Cause of Action</u>

10       Plaintiffs' second cause of action alleges that Sheriff Doyle and Chief Kreins, as policy

11   making officials, were responsible for the individual Officers' actions in that they either participated

12   in or knew of "their subordinates' deliberate indifference in failing to take immediate measures to

13   ensure that a person in custody be provided with all necessary monitoring and medical care to

14   protect his or her health and safety, subsequently causing injuries or deaths."  Compl. ¶¶ 97, 99.

15       Under 42 U.S.C. § 1983, government officials may not be held liable for the unconstitutional

16   conduct of their subordinates under a theory of respondeat superior.  *Monell v. New York Dept. of*

17   *Soc. Serv.*, 436 U.S. 658, 691 (1978); *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001).  A

18   supervisor may be liable under § 1983 only if there exists either "'(1) his or her personal

19   involvement in the constitutional deprivation, or (2) a sufficient causal connection between the

20   supervisor's wrongful conduct and the constitutional violation.'"  *Jeffers*, 267 F.3 at 915 (quoting

21   *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)).  Thus, "[a] supervisor is only

22   liable for constitutional violations of his subordinates if the supervisor participated in or directed the

23   violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d

24   1040, 1045 (9th Cir. 1989).

25       "[T]o be held liable, the supervisor need not be 'directly and personally involved in the same

26   way as are the individual officers who are on the scene inflicting constitutional injury.'"  *Starr v.*

27   *Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011), *cert. denied,* 132 S. Ct. 2101 (2012) (quoting *Larez v.*

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    *City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). "Rather, the supervisor's participation could

2    include his 'own culpable action or inaction in the training, supervision, or control of his

3    subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,'

4    or 'conduct that showed a reckless or callous indifference to the rights of others.' *Id.* at 1205-06

5    (quoting *Larez*, 946 F.2d at 646). "The law clearly allows actions against supervisors under section

6    1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color

7    of law of a federally secured right." *Id.* at 1207 (internal quotation marks and citation omitted).

8    "The requisite causal connection can be established . . . by setting in motion a series of acts by

9    others," *Redman*, 942 F.2d 1435, 1447 (9th Cir. 1991) (alteration in original; internal quotation

10    marks omitted), or by "knowingly refus[ing] to terminate a series of acts by others, which [the

11    supervisor] knew or reasonably should have known would cause others to inflict a constitutional

12    injury," *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).

13        Here, accepting Plaintiffs' allegations as true, the Court finds that Plaintiffs have stated a

14    valid claim against Chief Kreins. Plaintiffs allege that Kreins failed to properly train, assign,

15    supervise, and guide his staff to take the necessary measures to ensure the health and safety of

16    arrested persons. Compl. ¶ 96. Chief Kreins' inaction in the training, supervision, or control of his

17    subordinates is enough to hold him liable under § 1983. *Starr*, 652 F.3d at 1205. Further, Plaintiffs

18    specifically allege that Kreins has either participated in or knew of his subordinates' deliberate

19    indifference to arrestees such as Carmignani's health and safety, and that this deliberate indifference

20    caused the failure to take immediate measures to ensure that a person in custody be provided with all

21    necessary monitoring and medical care to protect his or her health and safety. Compl. ¶ 97.

22    Accordingly, the City Defendants' Motion to Dismiss Plaintiffs' second cause of action under the

23    Fourteenth Amendment is DENIED as to Chief Kreins.

24        The Court also finds that Plaintiffs have stated a valid claim against Sheriff Doyle. Under

25    California law, "[t]he sheriff is required by statute to take charge of and keep the county jail and the

26    prisoners in it, and is answerable for the prisoner's safekeeping." *Redman*, 942 F.2d at 1446 (citing

27    Cal. Gov't Code §§ 26605, 26610; Cal. Pen. Code § 4006). The Ninth Circuit has held that

28

United States District Court
For the Northern District of California

1  "acquiescence or culpable indifference" may suffice to show that a supervisor "personally played a

2  role in the alleged constitutional violations." *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th

3  Cir. 2005); *Redman*, 942 F.2d at 1446.  A plaintiff's allegations that the actions or inactions of the

4  person "answerable for the prisoner's safe-keeping" caused their injuries are therefore sufficient to

5  state a claim of supervisory liability for deliberate indifference. *Starr*, 652 F.3d at 1208.  Here,

6  Plaintiffs allege that Sheriff Doyle failed to properly train, assign, supervise, and guide his staff and

7  medical personnel at the Marin County Jail to take the necessary measures to ensure the health and

8  safety of arrested persons, including Carmignani.  Compl. ¶ 96.  Plaintiffs further allege that Doyle

9  failed to properly supervise the medical services at the Marin County Jail in that jail personnel were

10  not trained to properly classify, house, or monitor inmates suffering from health conditions. *Id.* ¶ 98.

11  Accordingly, Plaintiffs have set forth enough facts to state a claim for relief that is plausible on its

12  face, and the City Defendants' Motion to Dismiss Plaintiffs' second cause of action under the

13  Fourteenth Amendment is DENIED as to Sheriff Doyle.

14          3.      Third Cause of Action

15          Plaintiffs' third cause of action alleges that the City of Novato and Marin County are liable

16  under 42 U.S.C. § 1983 for the actions of the Individual Officers. *Id.*  ¶¶ 102-09.  Pursuant to

17  *Monell*, a local government may not be sued under § 1983 for an injury inflicted solely by its

18  employees or agents.  436 U.S. at 694.  "Instead, it is when execution of a government's policy or

19  custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

20  represent official policy, inflicts the injury that the government as an entity is responsible under §

21  1983." *Id.*  "As long as the government entity receives notice and an opportunity to respond, an

22  official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."

23  *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985).

24          To establish municipal liability under § 1983, a plaintiff must show that (1) he was deprived

25  of a constitutional right; (2) the municipality had a custom or policy; (3) that amounted to a

26  deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force

27  behind the constitutional violation. *East v. City of Richmond*, 2010 WL 4580112, at *3 (N.D. Cal.

28

1   Nov. 3, 2010).  This municipal liability may be based on (1) an express municipal policy, such as an

2   ordinance, regulation, or policy statement; (2) a widespread practice that, although not authorized by

3   written law or express municipal policy, is so permanent and well settled as to constitute a custom or

4   usage with the force of law; or (3) the decision of a person with final policymaking authority.  *City*

5   *of St. Louis v. Praprotnik*, 485 U.S. 112, 123-27 (1988).

6            Here, Plaintiffs allege that the Individual Officers were fully aware that Carmignani was in

7   emergent need of access to medical care, but acted in conformity with the City of Novato's and

8   Marin County's customs, policies, and practices in failing to conduct proper searches of arrestees,

9   and failing to convey information to other agencies of government.  *Id.* ¶ 103.  As to Marin County,

10  Plaintiffs further allege that the custom or policy includes denying inmates access to medical care,

11  failing to properly classify, house, or monitor inmates suffering from health conditions, and failing

12  to provide medical care for serious medical conditions.  *Id.*  Plaintiffs further allege that the City of

13  Novato and Marin County failed to institute proper and adequate training, supervision, and

14  procedures for monitoring inmates such as Carmignani who have ingested narcotics or other

15  dangerous substances.  *Id.* ¶ 105.  Plaintiffs allege that the authorized policymakers for the City of

16  Novato and Marin County have direct knowledge of the fact that Carmignani was unlawfully denied

17  necessary care, but they made a deliberate choice to endorse the Individual Officers' conduct.  *Id.* ¶

18  107.  In so doing, Plaintiffs allege that the municipalities showed affirmative agreement with the

19  Individual Officers' actions and ratified their unconstitutional acts.  *Id.*  "A municipality may be held

20  liable for a constitutional violation under the theory of ratification if authorized policymakers

21  approve a subordinate's decision and the basis for it."  *East*, 2010 WL 4580112, at *4 (internal

22  quotations and citation omitted).  "In particular, the policymaker must have knowledge of the

23  constitutional violation and actually approve of it."  *Id.* (internal quotations and citation omitted).

24  Thus, accepting Plaintiffs' allegations as true, the Court finds that Plaintiffs have set forth enough

25  facts to state a claim for relief that is plausible on its face, and the City Defendants' and County

26  Defendants' Motions to Dismiss Plaintiffs' third cause of action under the Fourteenth Amendment

27  are DENIED.

28

United States District Court
For the Northern District of California

1

**B.      Fourth Cause of Action under California Government Code section 845.6**

2           Plaintiffs' fourth cause of action alleges that Deputy Hammer and Marin County are liable

3   under California Government Code section 845.6 for failure to take reasonable action to provide

4   Carmignani with access to proper medical treatment and housing based on his known condition.

5   Compl. ¶ 111.

6           Section 845.6 provides that "a public employee, and the public entity where the employee is

7   acting within the scope of his employment, is liable if the employee knows or has reason to know

8   that the prisoner is in need of immediate medical care and he fails to take reasonable action to

9   summon such medical care." Cal. Gov't Code § 845.6.[1]  Accordingly, "[i]n order to state a claim

10  under [section] 845.6, a prisoner must establish three elements: (1) the public employee knew of or

11  had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon

12  such care." *Jett*, 439 F.3d at 1099 (citing Cal. Gov't Code § 845.6).  "'Liability under section 845.6

13  is limited to serious and obvious medical conditions requiring immediate care.'"  *Lucas v. Cnty. of*

14  *Los Angeles*, 47 Cal. App. 4th 277, 287-88 (1996) (quoting *Watson v. State*, 21 Cal. App. 4th 836,

15  841 (1993)).  The term "immediate medical care" includes both diagnosis and treatment.  *Jett*, 439

16  F.3d at 1099.

17          Here, based on the facts stated above, Plaintiffs allege that Deputy Hammer and Marin

18  County knew or had reason to know that Carmignani was in need of immediate medical care,

19  treatment, observation and monitoring, and that he required special housing for his own safety and

20  well-being.  Compl.  ¶ 111.  Plaintiffs further allege that the Defendants failed to take reasonable

21  action to summon and/or provide him access to such medical care and treatment and provide him

22  proper housing.  *Id.*  Accepting Plaintiffs' allegations as true, the Court finds that Plaintiffs have set

23  forth enough facts to state a claim for relief under section 845.6 that is plausible on its face.  In their

24  Motion, the County Defendants argue that Plaintiffs cannot allege facts supporting a claim against

25

26          [1]  As to the County, section 815.2 creates liability on the part of a public entity for injury caused
    by an action or omission of an employee if the action or omission would give rise to a cause of action
    against that employee.  Cal. Gov't Code § 815.2.  Thus, sections 845.6 and 815.2 together create the
27  potential for liability on the part of a public entity.

28

1    them because they could not have known Carmignani needed immediate medical care until they

2    entered his cell around noon on July 30, 2011.  County Mot. at 8.  However, as stated above,

3    Plaintiffs allege facts which, taken as true, show that the County Defendants knew or had reason to

4    know of Carmignani's medical needs much earlier.  Compl. ¶¶ 49-54, 56-57, 72-76.  It would be

5    improper for the Court to resolve any factual disputes at this stage in the proceedings.  Accordingly,

6    the County Defendants' Motion to Dismiss Plaintiffs' fourth cause of action under California

7    Government Code section 845.6 is DENIED.

8    **C.      Fifth Cause of Action under California Civil Code section 52.1**

9            Plaintiffs' fifth cause of action alleges that all named Defendants violated California Civil

10   Code section 52.1 by acting in a conspiracy.  Compl. ¶¶ 113-115.  Section 52.1 permits a civil action

11   against a person who interferes or attempts to interfere by threats, intimidation or coercion with

12   "exercise or enjoyment" of rights secured by the United States and California Constitutions and

13   laws.  *Meyers v. City of Fresno*, 2011 WL 902115, at *6 (E.D. Cal. Mar. 15, 2011).  "Section 52.1(b)

14   provides a cause of action to any person who has been denied rights under the laws of California."

15   *Winarto*, 274 F.3d 1276, 1289, n. 13 (9th Cir. 2001), *cert. denied*, 537 U.S. 1098 (2003).  A section

16   52.1 plaintiff must demonstrate that the constitutional violation "occurred and that the violation was

17   accompanied by threats, intimidation or coercion within the meaning of the statute."  *Barsamian v.*

18   *City of Kingsburg*, 597 F. Supp. 2d 1054, 1057 (E.D. Cal. 2009).  The necessary elements for a

19   section 52.1 claim are: "(1) defendants interfered with plaintiff's constitutional rights by threatening

20   or committing violent acts; (2) that plaintiff reasonably believed that if she exercised her

21   constitutional rights, defendants would commit violence against her property; (3) plaintiff was

22   harmed; and (4) defendants' conduct was a substantial factor in causing plaintiff's harm."  *Tolosko-*

23   *Parker v. County of Sonoma*, 2009 WL 498099, at *5 (N.D. Cal. Feb. 26, 2009).  Here, Plaintiffs

24   admit that they failed to allege any acts of violence or intimidation or threats of such acts against any

25   Defendants.  City Opp'n at 22; County Opp'n at 23.  Accordingly, the City Defendants' and County

26   Defendants' Motions to Dismiss are GRANTED as to Plaintiffs' fifth cause of action.

27

28
                                    Page 15 of  18

**D.      Sixth and Seventh Causes of Action for Negligence & Wrongful Death Based on Negligence**

Plaintiffs' sixth cause of action for wrongful death based on negligence is brought by Plaintiff Lynnette Frary against all named Defendants.  Compl. ¶¶ 116-120.  Frary alleges that each Defendant owed her the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.  *Id.* ¶ 117.  Plaintiffs' seventh cause of action is brought by Frary against all named Defendants for survival damages based on negligence.  *Id.* ¶¶ 121-22.

The City Defendants argue that Frary's claims fail as to the City because the Complaint fails to allege any statute imposing a duty on a public entity to "act with due care" or "act with reasonable care."  City Mot. at 19.  The City Defendants further argue that the sixth and seventh causes of action are subject to dismissal as to the Individual City Defendants because the Complaint fails to state facts showing that City personnel owed any legal duty to Carmignani.  *Id.*  The County Defendants raise the same arguments as the City Defendants.  County Mot. at 9.

In their Opposition, Plaintiffs argue that Frary's claims are valid because the Complaint alleges that Defendants violated California Government Code section 845.6.  County Opp'n at 22. However, to the extent that Plaintiffs' fourth cause of action is also brought under section 845.6, any such claim here is redundant.  *See Zelig v. Cnty. of Los Angeles*, 27 Cal.4th 1112, 1132 (2002) (finding it impermissible for a plaintiff to add a general tort claim to a statutory claim they may have against public employees and public entities, so as to expand the circumstances where there is potential liability).  Thus, Frary's sixth and seventh causes of action cannot withstand dismissal on this ground alone.

Plaintiffs further argue that Defendants are liable under California Government Code section 844.6.  County Opp'n at 22-23.  Although not alleged in their Complaint, section 844.6 states, in relevant part: "Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission."  Cal. Gov't Code § 844.6(d). California has recognized that "there is a special relationship between jailer and prisoner which imposes a duty of care on the jailer to the prisoner."  *Giraldo v. CDCR*, 168 Cal. App. 4th 231, 252-

Page 16 of  18

United States District Court
For the Northern District of California

53 371 (2008).  Federal courts recognizing this duty have cited to section 844.6.  *See Kodimer ex rel. Lyn Ramskill v. Cnty. of San Diego*, 2010 WL 2635548, *10 (S.D. Cal. 2010); *Hightower v. Tilton*, 2012 WL 1194720, at *10 (E.D. Cal. Apr. 10, 2012).  Thus, "[a] plaintiff may maintain a negligence action under California law against individual government employees for breach of a legal duty." *Kodimer*, 2010 WL 2635548, *10  (citing Cal. Gov't Code § 844.6(d)).  With this in mind, the Court shall permit Plaintiffs to amend their Complaint as to the Individual Defendants, but only if they can allege sufficient facts to establish a claim that is not duplicative of their section 845.6 claim.  *See Baker v. Cnty. of Sonoma*, 2009 WL 330937, at *4 (N.D. Cal. Feb. 10, 2009) (permitting negligence claim against individual defendants pursuant to section 844.6); *Holland v. City of San Francisco*, 2010 WL 5071597, at *10-11 (N.D. Cal. Dec. 7, 2010); *Hernandez v. Jordan*, 2009 WL 937960, at *2 (E.D. Cal. Apr. 7, 2009).  Accordingly, the City Defendants' and County Defendants' Motions to Dismiss Plaintiffs' sixth and seventh causes of action are GRANTED WITH LEAVE TO AMEND as to the Individual Defendants.[2]

As to the public entity Defendants, "[e]xcept as provided in California Government Code § 845.6, a public entity cannot be liable for an injury to a prisoner." *Irvine v. City & Cnty. of San Francisco*, 2001 WL 967524, at *14 (N.D. Cal. July 12, 2001) (citing Cal. Gov't Code § 844.6). Thus, the City Defendants' and County Defendants' are entitled to immunity and their Motion to Dismiss the sixth and seventh causes of action are GRANTED WITHOUT LEAVE TO AMEND as to the public entity Defendants.

**CONCLUSION**

Based on the analysis above, the Court hereby GRANTS IN PART and DENIES IN PART the City Defendants' and County Defendants' Motions to Dismiss as follows:

1)      Defendants' Motions are GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' first, second, and third causes of action under the First, Fourth, Fifth, and Eighth Amendments under the United States Constitution.  Defendants' Motions are DENIED as to Plaintiffs'

---

[2] If Plaintiffs choose to file an amended claim, they must specify which Defendants the claim is brought against and which specific facts support that claim as to each Defendant.

Page 17 of  18

first, second, and third causes of action under the Fourteenth Amendment.

2)    The County Defendants' Motion is DENIED as to Plaintiffs' fourth cause of action.

3)    Defendants' Motions are GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' fifth cause of action.

4)    Defendants' Motions are GRANTED WITH LEAVE TO AMEND as to Plaintiffs' sixth and seventh causes of action as to the Individual Defendants, as limited above.  Defendants' Motions are GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' sixth and seventh causes of action as to the public entity Defendants.

Plaintiffs shall file any amended complaint, consistent with this Order, by January 3, 2013.

**IT IS SO ORDERED.**

Dated: December 13, 2012

_____
MARIA-ELENA JAMES
United States Magistrate Judge