UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNNETTE FRARY, et al.,<br><br>    Plaintiffs,<br><br>   v.<br><br>COUNTY OF MARIN, et al.,<br><br>    Defendants. | Case No. 12-cv-03928-MEJ<br><br>**ORDER GRANTING CITY DEFENDANTS' MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION**<br><br>Re: Dkt. No. 190 |

**INTRODUCTION**

Pending before the Court is the City Defendants'[1] Motion for Determination of Good Faith Settlement with Plaintiffs, who asserted claims against the City Defendants for violations of Anthony Carmignani's constitutional rights and California state law. Dkt. No. 190 ("Mot."). Plaintiffs also sued the County of Marin and related staff (the "County Defendants"), who oppose the City Defendants' Motion. *See* Dkt. No. 193 ("Opp'n"). The parties attended a case management conference before the Court on March 17, 2015, where the parties discussed the pending motion and related case management issues. Dkt. No. 207. Subsequently, the Court ordered supplemental briefing on the motion and set a settlement conference between all the parties for May 6, 2015, before Magistrate Judge Jacqueline Scott Corley. Dkt. No. 208 (Order Setting Settlement Conference) & Dkt. No. 210 (Order for Supplement Briefing, "Order"). The City Defendants filed their supplemental briefing and evidence (Dkt. No. 218, "Suppl. Br."), and the County Defendants filed a supplemental Opposition (Dkt. No. 223, "Suppl. Opp'n"). Now,

---

[1] The "City Defendants" refers to the City of Novato, Chief Joseph Kreins, Officer Thomas MacKenzie, Officer Michael Dunn, and Officer Stephanie Commisto.

having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** the City Defendants' Motion for Determination of Good Faith Settlement.

### BACKGROUND

On July 30, 2010, Carmignani died of a drug overdose while in the custody of the Marin County Jail. The day before, Novato Police had arrested Anthony Carmignani and transported him to the Jail. Plaintiffs allege that, among other things, Novato Police Officers knew that Carmignani had drugs in his possession, but they failed to adequately search him to discover those drugs, which Carmignani later ingested in the police vehicle. Plaintiffs also allege that another Novato Police Officer failed to convey information to the Jail staff that Carmignani had possession of narcotics earlier that day and his mother's belief that he likely ingested those drugs and needed to be monitored. Carmignani left behind his mother, Plaintiff Lynette Frary, and his wife, Plaintiff Heather Howard, as well as his minor daughter, Plaintiff Amaya Carmignani, who is represented by her guardian *ad litem*, Plaintiff Jamie Ball.

Plaintiffs brought claims against the City Defendants, as well as Marin County and its jail staff under 42 U.S.C. § 1983, alleging violations of Carmignani's constitutional rights and related state law claims. The Court recently granted in part and denied in part the County Defendants' Motion for Summary Judgment. The City Defendants, however, did not file a dispositive motion. The City Defendants and Plaintiffs evidently entered into a settlement back in May 2014 during mediation before the Honorable Alfred Chiantelli (Ret.). The Court was first apprised of the City Defendants and Plaintiffs' settlement on October 2, 2014, the deadline for filing dispositive motions. *See* Dkt. No. 92 (scheduling order); Dkt. No. 108 (Plaintiffs' Motion to Distribute Settlement Proceeds); *see also* Dkt. No. 120 at 1 (County Defendants' Opposition to Plaintiffs' Motion to Distribute Settlement Proceeds, noting that as of October 30, 2014, "neither Plaintiffs nor City Defendants have filed a notice of settlement in this case." (citing Brewer Decl. ¶ 3, Dkt. No. 121)). The County Defendants first learned about the City Defendants and Plaintiffs' settlement in June 2014. Brewer Decl. ¶ 2. The settlement took place without the County Defendants' knowledge or participation. *Id.*

As a condition to this settlement, the City Defendants required Plaintiffs to obtain the

Court's approval of the compromise of the minor's claim, which the Court granted on February 10, 2015. Dkt. No. 189. The Court also denied without prejudice Plaintiffs' earlier Motion to Distribute Settlement Proceeds in response to Plaintiffs' letter dated December 23, 2014, which informed the Court that Plaintiffs intended to withdraw that motion. *See* Dkt. No. 173 (Letter from Plaintiffs). The City Defendants then submitted their Motion for Determination of a Good Faith Settlement with Plaintiffs, originally filed on February 12, 2015. The County Defendants opposed the Motion primarily on the ground that the City Defendants failed to provide adequate evidence establishing their proportion of liability. Opp'n at 10. The Court agreed, and ordered the City Defendants to submit supplemental briefing and evidence supporting the required *Tech-Bilt* factors and particularly the factor related to proportional liability. Order at 10; *see Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499 (1985) (establishing factors considered in assessing a good faith settlement motion). In accordance with the Court's order, the City Defendants have now filed supplemental briefing and evidence in support of their position.

Additionally, since the Court's order for supplemental briefing, the County Defendants and Plaintiffs have reached their own preliminary settlement agreement (*see* Dkt. No. 225), and Plaintiffs filed a Motion to Approve the Compromise of a Minor's Claim in relation to the settlement with the County Defendants (Dkt. No. 226). Against this background, the Court considers the City Defendants' Motion for a Good Faith Settlement Determination.

## LEGAL STANDARD

California Code of Civil Procedure section 877.6(a) states that "[a]ny party to an action wherein it is alleged that two or more parties are joint tortfeasors shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors . . . ." Cal. Civ. Proc. Code § 877.6(a); *Tech-Bilt*, 38 Cal. 3d at 493. In turn, "[a] determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Civ. Proc. Code § 877.6(c); *Tech-Bilt*, 38 Cal. 3d at 493.

The California Supreme Court has held that "[t]he good faith provision of section 877

1  mandates that the courts review agreements purportedly made under its aegis to insure that such
2  settlements appropriately balance the contribution statute's dual objectives." *Tech-Bilt*, 38 Cal. 3d
3  at 494. The legislative objectives in promulgating Section 877 were "equitable sharing of costs
4  among the parties at fault, and . . . encouragement of settlements." *River Garden Farms, Inc. v.*
5  *Superior Court*, 26 Cal. App. 3d 986, 993 (1972). However, "equitable sharing" does not require
6  *equal* sharing. *Id.* In *Tech-Bilt*, the California Supreme Court held that when determining
7  whether a settlement is made in good faith,

> the intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.

*Tech-Bilt*, 38 Cal. 3d at 499. The Court must inquire as to "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Id.* Stated another way, the "settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Id.* (citation omitted).

A party opposing the motion for good faith settlement bears the burden of establishing a lack of good faith. *Id.* at 493; *see also* Cal. Civ. Proc. Code § 877.6(d). To successfully oppose a motion for good faith settlement, the opposing party "must demonstrate . . . that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt*, 38 Cal. 3d at 499-500. The determination as to whether a settlement is made in good faith is a matter within the court's discretion. *Id.* at 502.

**DISCUSSION**

As an initial matter, the Court has already found that there is no federal right to contribution under Section 1983. Order at 4-5. *See Hoa v. Riley*, ___ F. Supp. 3d ___, 2015 WL 348703, at *3-4 (N.D. Cal. Jan. 26, 2015) (collecting cases and finding that under current Ninth

4

Circuit law, there is no right of indemnification or contribution under Section 1983, nor does 42 U.S.C. § 1988 permit borrowing state law on contribution). Plaintiffs' state law negligence claims, however, may be subject to contribution. *See* Cal. Civ. Proc. Code § 875(a) ("Where a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them[.]"); Cal. Civ. Code § 1432 ("Except as provided in Section 877 of the Code of Civil Procedure, a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him."). Accordingly, the Court's analysis is limited to considering the potential contribution for Plaintiffs' state law negligence claims.

To determine whether a settlement falls within the reasonable range, the Court weighs the amount of the settlement in light of (1) a rough approximation of the plaintiff's potential recovery and the settlor's proportionate liability in view of the settlement amount; (2) a recognition that a settlor should pay less in settlement than if found liable at trial; (3) the allocation of settlement proceeds among plaintiffs; (4) financial conditions and insurance policy limits of the settling defendants; and (5) any evidence, or absence of evidence, of collusion, fraud or tortious conduct between the settling parties aimed at making non-settling parties pay more than their fair share. *Tech-Bilt*, 38 Cal. 3d at 499. In this analysis, "the court is called upon to make a 'rough approximation' of what the plaintiff would actually recover." *Cahill v. San Diego Gas & Elec. Co.*, 194 Cal. App. 4th 939, 964 (2011) (citations and internal marks omitted).

As described below, the Court finds that the above factors weigh in favor of finding the City Defendants' settlement with Plaintiffs was made in good faith.

**A.   Rough Approximation of Plaintiffs' Recovery and City's Proportionate Liability**

Initially, the Court agreed with the County Defendants that the City Defendants failed to provide adequate evidence establishing their proportion of liability. Order at 7-10. As the County Defendants contended, "Section 877.6 and *Tech-Bilt* require an evidentiary showing, through expert declarations or other means that the settlement is within the reasonable range permitted by the criterion of good faith." Opp'n at 10 (citing Cal. Civ. Proc. Code § 877.6(b); *Tech-Bilt*, 38 Cal. 3d at 500); *see also Toyota Motor Sales U.S.A., Inc. v. Superior Court*, 220 Cal. App. 3d 864,

871 (1990), *as modified* (June 5, 1990) ("[i]f . . . there is no substantial evidence to support a critical assumption as to the nature and extent of a settling defendant's liability, then a determination of good faith based upon such assumption is an abuse of discretion."). The Court found that "[w]hile the County Defendants have the burden of establishing that the settlement was not made in good faith, they are correct that the Court cannot make a good faith determination without the requisite information and support." Order at 10 (citation omitted).

Having reviewed the City Defendants' supplemental briefing and supporting evidence, the Court finds that they have now provided sufficient evidence establishing a rough approximation of Plaintiffs' total recovery or its proportionate liability. *See Tech-Bilt*, 38 Cal. 3d at 499; *Toyota Motor Sales*, 220 Cal. App. 3d at 871 ("Substantial evidence, of course, is not synonymous with 'any' evidence, but is evidence which is of ponderable legal significance. It must be 'reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case.'" (citations omitted)). The Court is satisfied that there is now substantial evidence showing that "the subject settlement is in the ballpark" of the City Defendants' proportionate liability. *Mattco Forge, Inc. v. Arthur Young & Co.*, 38 Cal. App. 4th 1337, 1352 (1995), *as modified on denial of reh'g* (Oct. 26, 1995).

Specifically, the City Defendants have provided evidence that prior to the May 2014 mediation held in this case, all five of the named partners for the law firm that represents the City Defendants met, discussed, and analyzed both the liability and proportionate liability of the City Defendants. Osman Decl. ¶ 4, Dkt. No. 218-1. The named partners have a significant number of years in practice and seemingly a great deal of experience among them. *Id.* Richard Osman, one of those partners, states in his declaration that he and his partners assessed the City Defendant's potential exposure and did not perceive a significant exposure to either Section 1983 liability or a Section 1988 fee claim. *Id.* Osman indicates that this view was shared by the settlement mediator. *Id.* Osman and his partners assessed the likelihood that the City Defendants would be found to be liable under Section 1983 for deliberate indifference at less than 10%. *Id.*

They did, however, assess the City Defendants' exposure for Plaintiffs' negligence claims to be more significant. *Id.* In this analysis, they appear to consider Plaintiffs' negligence claims

6

as a whole—in other words, they considered the total liability for Plaintiff's negligence claims against both the City and County Defendants. *Id.* ¶ 5. They "concluded that, based on decedent's poor relationship with each of the three plaintiffs, combined with his complete lack of financial support for any plaintiff and his past and future incarcerations, the maximum jury verdict exposure against both COUNTY and CITY defendants on all three plaintiffs' negligence claims was $800,000." *Id.* The City Defendants addressed in detail the Plaintiffs' relationship with Carmignani and the amount of support he had provided them. *See* Suppl. Br. at 2-5. Osman and his partners then discounted the total liability amount based on Carmignani's own comparative fault, which they view as substantial. Osman Decl. ¶ 5. Specifically, they note that "[w]hether decedent ingested pills before his arrest or on the way to jail, either to get high or to destroy evidence or both, he bore a very significant degree of fault for his own death." *Id.* Accordingly, they assessed his comparative fault to be, at a minimum, around 25%, and in turn, assessed the maximum exposure to both the City and County for all of Plaintiffs' negligence claims at $600,000. *Id.*

They then weighed the proportionate liability between the City Defendants and the County Defendants. *Id.* ¶ 6. To do so, they weighed the following considerations: (1) the time period Carmignani was in the physical custody of each set of Defendants (*id.* ¶ 6(a)); (2) the responsibilities of the City Defendants compared with the County Defendants (*id.* ¶ 6(b)); and (3) the degree to which the City Defendants' acts contributed to the County Defendants' potential liability, i.e., the County Defendants "lack-of-notice" argument (*id.* ¶ 6(c)). They found that Carmignani spent considerably less time with the City Defendants than the County Defendants. *Id.* ¶ 6(a). They also found that the County Defendants' responsibilities were more related to caring for Carmignani, for instance, by housing him, feeding him, and providing for his medical needs, whereas the City Defendants were only responsible for investigating, arresting, and transporting him to the County. *Id.* ¶ 6(b). Finally, they considered the County's potential argument that "had CITY defendants just informed them that decedent was under the influence of drugs, then the [County Defendants] would have properly cared for him." *Id.* ¶ 6(c). They largely rejected this argument, describing in detail all the individual actions by the County Defendants,

7

which theoretically identified risks to Carmignani that could have prevented his injuries. *Id.* In light of these considerations, Osman and his partners assessed the City Defendants' proportional liability for Plaintiffs' negligence claims within a range of one-quarter (25%) to one-third (33%) to the City Defendants, and a range of two-thirds (66%) to three-quarters (75%) to the County Defendants. *Id.* ¶ 7. As a result, they assessed the City Defendants' liability to be in the range of $150,000 to $200,000. *Id.*

In considering this motion, the Court is satisfied with the City Defendants' and their counsel's assessment of their liability. As the Court noted in its previous Order, *Tech-Bilt* provided an example of how one court determined the reasonable range or rough approximation of a settling tortfeasor's proportional liability: *Widson v. International Harvester Co.*, 153 Cal. App. 3d 45 (1984), *superseded by statute on other grounds as stated in Millard v. Biosources, Inc.*, 156 Cal. App. 4th 1338, 1349 (2007). *See Tech-Bilt*, 38 Cal. 3d at 501. In *Widson*, the plaintiff settled with a joint tortfeasor, Louetto, for $30,000, which the trial court, and later, the Court of Appeal, found was a settlement made in good faith. *Widson*, 153 Cal. App. 3d at 58. As *Tech-Bilt* noted, the Court of Appeal found that "'Substantial evidence supports the trial court's determination the amount of the settlement is in fact fair.'" *Tech-Bilt*, 38 Cal. 3d at 501 (quoting *Widson*, 153 Cal. App. 3d at 58). Specifically, *Tech-Bilt* endorsed the *Widson* Court's consideration of the fact that "[e]valuations of Louetto's potential liability ranged from zero to 10 percent of plaintiff's recovery. Counsel for Louetto expressed the view that in the worst case Louetto's exposure would tally 25 percent. Evaluations of plaintiff's total recovery ranged from $200,000 to $750,000." *Id.* (quoting *Widson*, 153 Cal. App. 3d at 58 (internal marks omitted)). Thus, the *Widson* Court found that "it cannot be said the $30,000 paid by Louetto was unreasonable." *Id.* (quoting *Widson*, 153 Cal. App. 3d at 58 (internal marks omitted)). Comparing *Widson* to this case, the Court finds that the City Defendants' assessed range of their proportional liability is based on evidence that is reasonable in nature, credible, and of solid value when considering the claims in this case.

With the evidence put forward by the City Defendants, it is the County Defendants' burden to establish that the settlement was not made in good faith, and they have not done so. The County Defendants argue that the City Defendants actions "warrant a contribution more

8

significant than a small percentage of the claimed damages." Suppl. Opp'n at 2. Specifically, they note that the City Defendants "fail[ed] to competently search Carmignani prior to confining him in the patrol car, fail[ed] to secure safety restraints on him, fail[ed] to monitor him during the trip to jail, and fail[ed] to report to the jail about his condition including complaints about 'burning up,' and removal of his shirt[.]" *Id.* This evidence is not insubstantial. But as the City Defendants indicate, there were also several occasions on which the County Defendants may have been able to intervene or where their own acts may have prevented Carmignani's injuries. Suppl. Br. at 6-7; Osman Decl. ¶ 6(c). They also point out the Carmignani's own acts may have contributed more significantly to his injuries. Suppl. Br. at 5; Osman Decl. ¶ 5. Given this evidence, the Court cannot find that the settlement is "grossly disproportionate to the settlor's fair share." *Abbott Ford*, 43 Cal. 3d at 874-75. And to the extent that the County is concerned about the proportionality of the settlement amount compared with the amounts claimed by Plaintiff, that consideration is not applicable here. *See Cahill*, 194 Cal. App. 4th at 964 ("[a] plaintiff's claims for damages are not determinative in finding a settlement was made in good faith."); *see also Tech-Bilt*, 38 Cal. 3d at 501 (recognizing that settlement amounts may not be at all proportional to sums prayed for in the complaint).

A good faith settlement "does not call for a perfect apportionment of liability[,]" but rather it calls for "a rough approximation between a settling tortfeasor's offer of settlement and [its] proportionate liability." *F.D.I.C.. ex rel. Am. Commerce Nat. Bank v. Garner*, 168 F.3d 498, at *2 (9th Cir. 1999) (unpublished) (citing *N. Cnty. Contractor's Ass'n Inc. v. Touchstone Ins. Serv.*, 27 Cal. App. 4th 1085, 1090-91 (1994)). While not a perfect assessment of liability, the Court finds the settlement amount proposed here is in the reasonable range or rough approximation of the City Defendants' proportional liability for Plaintiffs' negligence claims. The County Defendants have not met their burden of showing otherwise.[2]

---

[2] The County Defendants cite the case of *U-Haul Co. of Nevada v. United States*, 2012 WL 6043278, at *2 (D. Nev. Dec. 4, 2012), but that case is inapposite here. The District Court of Nevada applied Nevada law in its analysis, and unlike in California, Nevada mandates that the settling defendants have the burden of proving that the settlement was in good faith. *See id.* at 1 (citing *Doctors Co. v. Vincent*, 98 P.3d 681, 686-87 (Nev. 2004)); *compare* Cal. Civ. Proc. Code § 877.6(d); *Tech-Bilt*, 38 Cal. 3d at 499.

### B. Recognition that a Settlor Should Pay Less in Settlement than at Trial

The second *Tech-Bilt* factor recognizes "that a settlor should pay less in settlement than he would if he were found liable after a trial." 38 Cal. 3d at 499. As discussed above, theoretically, the City Defendants' settlement figure is within the range of what they would be responsible for if found liable at trial. As there no significant dispute between the parties on this factor, the Court finds that it weights in favor of granting the City Defendants' Motion.

### C. Allocation of Settlement Proceeds Among Plaintiffs

Plaintiffs have agreed to the following allocation of the settlement: $146,250.00 to Carmignani's minor daughter (75% of the settlement), $29,250.00 to Plaintiff Frary (15%), and $19,500.00 to Plaintiff Howard (10%). Dkt. No. 109. The Court previously held a hearing considering whether the settlement was reasonable as to the minor Plaintiff, Carmignani's daughter. Dkt. No. 187. The Court approved the minor's compromise, which allotted at least 75% of the settlement to the minor Plaintiff. Dkt. No. 189. Having reviewed both the County's original opposition and the supplemental opposition, the County Defendants have not shown the allocation between the Plaintiffs is improper or why it should weigh against a finding that the settlement was made in good faith. Without more, the Court cannot find that this factor weighs against a finding of a good faith settlement.

### D. Financial Conditions and Insurance Policy Limits of the Settling Defendants

The City is permissibly self-insured up to $250,000, after which it has excess insurance with the Bay Cities insurance pool, for which it is assessed chargebacks for any settlement above this amount. Osman Decl. ¶ 8. The County Defendants also put forward evidence that the City's Adopted Fiscal Year Revenue Budget for 2014-15 is $49,556,197.00. Brewer Decl., Ex. N, Dkt. No. 194-2 (Adopted Budget Fiscal Year 2014/15). According to the City Defendants, they never sought a reduction in their fair share of a settlement based upon any inability to pay, and never claimed any hardship, financial distress or discount in this regard. Osman Decl., ¶ 8 & Ex. C. Given this information, the Court finds no grounds for concluding that this factor weighs against the City Defendants' Motion.

//

**E.     Evidence of Collusion, Fraud, or Tortious Conduct Between the Settling Parties**

There is no evidence that the City Defendants and the Plaintiffs engaged in any collusion, fraud, or tortious conduct in arriving at this settlement.

## CONCLUSION

In light of the foregoing analysis, the Court finds that the City Defendants have established that their settlement was reached in good faith within the meaning of California Code of Civil Procedure section 877.6, and **GRANTS** the City Defendants' Motion for Determination of Good Faith Settlement.  Accordingly, any and all parties are barred from pursuing any cross-complaints for contribution against the City Defendants for any cause related to the instant action pursuant to California Code of Civil Procedure section 877.6(c).

The Clerk shall terminate the City Defendants as parties to this action.

**IT IS SO ORDERED.**

Dated: June 16, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge